UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON
CIVIL ACTION NO. 5:06-CV-00160-JBC
*Electronically filed*

| | |
|---|---|
| PATRICIA S. HOLT, ET AL. | PLAINTIFFS |
| v. | |
| ESTATE OF KATHERINE S. WHALEN | DEFENDANT |
| AND | |
| ESTATE OF KATHERINE S. WHALEN | THIRD-PARTY PLAINTIFF |
| v. | |
| ESTATE OF ALVIN L. BLANTON, ET AL. | THIRD-PARTY DEFENDANTS |

**RESPONSE TO GREAT AMERICAN INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

The Estate of Katherine S. Whalen (the "Whalen Estate"), for its Response to the Third-Party Defendant Great American Insurance Company's ("GAIC") Motion for Summary Judgment, states as follows:

**INTRODUCTION**

This action began in May, 2006 as a wage and hour claim by Patricia S. Holt and Carla Garret against the Estate of Katherine S. Whalen. The Plaintiffs' Complaint asserted that Katherine Whalen's guardian, Alvin Blanton, hired them to perform home-companion and/or care giving services for Katherine Whalen, but failed to pay them for any work performed during the years 2003, 2004, and 2005. Ms. Holt alleged that she was owed $440,582 in unpaid wages, and Ms. Garrett alleged that she was owed $14,853. The Plaintiffs also requested statutory penalties for the alleged failure to pay, including costs and attorneys fees.

Because the Plaintiffs' claims arise solely from the alleged misconduct of Alvin Blanton, the Whalen Estate filed a Third-Party Complaint against Blanton and his surety, GAIC. That Third Party Complaint asserts that Blanton and GAIC are liable to the Whalen Estate for any damages that the Plaintiffs may recover in this case, and asserts additional claims against Blanton and GAIC arising from Blanton's embezzlement of funds and theft of personal property from the Whalen Estate.

GAIC's Motion for Summary Judgment is styled as an attack on the Whalen Estate's Third-Party Complaint. Three years after the Third-Party Complaint was filed, GAIC's Memorandum asserts that GAIC should be dismissed from this action because the Whalen Estate failed to properly allege a third-party claim under Rule 14. At its core, however, GAIC's argument is not that a Third-Party Complaint was never properly brought, but rather that a Rule 14 claim against it cannot succeed. To make this argument, however, GAIC takes great liberty with both Alvin Blanton's duties as surety under Kentucky law, and the evidence of misconduct that has been discovered thus far. When the evidence against Blanton is construed in a light most favorable to the Whalen Estate as is required on summary judgment, and when the full extent of Blanton's duties under Kentucky law are considered, it is clear that there is ample basis to hold Blanton (and GAIC as his surety) liable to the Whalen Estate on the Plaintiffs' claims.

As for the objection to the Third-Party Complaint itself, the Whalen Estate has now filed a Motion for Leave to File an Amended Third-Party Complaint that ought to resolve any such objections. This tendered Amended Third-Party Complaint is primarily intended to conform the pleadings to discovered evidence showing that Blanton's embezzlement was greater than initially believed, and that the Plaintiffs themselves were complicit in Blanton's misconduct. But the Amended Third-Party Complaint also clarifies the third-party claims against Blanton and GAIC

as his surety, thereby eliminating any concerns about the sufficiency of the pleading itself. And even if the Court did not permit the Amended Third-Party Complaint to be filed, the original Third-Party Complaint is sufficient to have given notice to GAIC of the nature of the claims against it, there is ample basis to keep GAIC as a party to this action under FRCP 19 and 20, and this Court has clear jurisdiction over GAIC. For all of these reasons, the Whalen Estate respectfully submits that GAIC's Motion for Summary Judgment should be denied.

## **FACTUAL BACKGROUND**

With respect to the manner of Alvin Blanton's initial appointment as limited guardian and limited conservator for Katherine Whalen, GAIC's Motion for Summary Judgment is accurate. Blanton was in fact appointed limited guardian and limited conservator on September 14, 2000 by the Order of Emergency Appointment of Fiduciary ("Emergency Order") attached as Exhibit A to GAIC's Motion.[1] GAIC is also correct that GAIC posted a fiduciary bond for $880,000 as security for the performance of Blanton's duties as fiduciary.[2] But the remainder of GAIC's statements regarding Blanton's limited guardianship and limited conservatorship are false. Most importantly, GAIC's statement that "Blanton served in his role as limited guardian and conservator until his death on November 4, 2005" is contradicted by the Order of Appointment of Guardian appointing Blanton full guardian on December 17, 2001.[3] It is in this role as full guardian that Blanton served until his death. And even during the period of his limited guardianship and limited conservatorship, Blanton's powers and duties were not limited to the three duties listed in GAIC's Motion. Rather, the specific powers set forth in the Court's Emergency Order were in addition to the general powers and duties established by Kentucky

---

[1] GAIC's Memorandum in Support of Motion for Summary Judgment ("GAIC Memorandum"), Exhibit A.
[2] GAIC Memorandum, Exhibit B.
[3] December 17, 2001 Order of Appointment of Guardian, attached hereto as Exhibit 1.

Statute.[4]  As for the period of his full guardianship, Blanton's powers and duties are those established by KRS 387.660.[5]

Regarding the claims asserted by the Plaintiffs', GAIC is correct that the Plaintiffs' Complaint was filed in May, 2006, that it makes claims for failure to pay wages for services performed, and that it was removed by the Whalen Estate to this Court on May 19, 2006.[6]  GAIC also correctly states that the Whalen Estate has asserted that GAIC is liable to the Whalen Estate to the extent that the Plaintiffs' claims arise from Alvin Blanton's breach of his fiduciary duties, although GAIC attempts to minimize the asserted bases for that liability.  To be clear, the Whalen Estate principally asserts that Alvin Blanton and GAIC as his surety are liable to it for the Plaintiffs' claims because any failure to pay wages owed by Alvin Blanton is gross mismanagement of Katherine Whalen's financial resources, and is therefore a breach of Alvin Blanton's fiduciary duties as limited guardian, limited conservator, and conservator.[7]  Essentially, the Whalen Estate submits that the only factual scenario under which the Plaintiffs' claims could have merit is if Alvin Blanton breached his fiduciary duties.  The damages that the Whalen Estate seeks from Alvin Blanton and GAIC for the Plaintiffs' claims includes not only the direct damages, but also any statutory penalties and fees awarded to the Plaintiffs, any punitive damages awarded, and the Whalen Estate's costs and fees incurred in defending the suit.[8]

But Alvin Blanton's alleged failure to pay the Plaintiffs' wages owed is hardly the only breach of his fiduciary duties for which claims are asserted against GAIC.  As GAIC has

---

[4] *See,* KRS 387.640 and 387.690.
[5] *See*, KRS 387.660.
[6] GAIC Memorandum, Exhibit C; Notice of Removal, D.E. No. 87.
[7] Whalen Estate's Responses to Interrogatory No. 2 (GAIC Memorandum, Exhibit B); and Whalen Estate's Supplemental Responses to Interrogatory Nos. 2 & 4, attached hereto as Exhibit 2.
[8] Whalen Estate's Supplemental Responses to Interrogatory No. 4.

acknowledged, the Whalen Estate also asserts that Alvin Blanton embezzled funds from Katherine Whalen for his own personal use, and stole or allowed others to steal a large amount of jewelry from Katherine Whalen.[9] To date, the full extent of Alvin Blanton's embezzlement remains unknown, primarily because his son, James Blanton, entered Katherine Whalen's residence shortly after Alvin Blanton's death and shredded or removed all of the guardianship records.[10] Nevertheless, the Whalen Estate has been able to piece together the following:

1)  Alvin Blanton had access to Katherine Whalen's Bank One Account No. 626332472, but he failed to disclose this account to the Fayette District Court. From January 11, 2001 to December 14, 2001, $19,441.52 was withdrawn in cash from this account.[11] Alvin Blanton is alleged to have stolen these funds. Additional records for this account may reveal additional stolen funds.

2)  Records from Katherine Whalen's Guardianship account reveal two checks totaling $11,000.00 that were written by Alvin Blanton and deposited in a First Federal Bank Account No. 0160210576. The checks describe the transaction as a "transfer". Alvin Blanton never revealed the existence of this account to the Fayette District Court. This account is alleged to have belonged to Katherine Whalen, and Alvin Blanton is believed to have embezzled funds from it.[12]

3)  Alvin Blanton received monthly $1,900.00 annuity checks from Katherine Whalen's Merrill Lynch investments, which checks he failed to deposit in her Guardianship Account. It is alleged that he embezzled these funds. The total amount alleged to have been embezzled is $117,800.00[13]

4)  Alvin Blanton wrote $13,738.17 in checks to himself or cash from Katherine Whalen's Guardianship Account for so-called loan repayment and anonymous withdrawals.[14] These funds are alleged to have been embezzled.

5)  In addition to the monthly checks, Alvin Blanton made numerous withdrawals from Katherine Whalen's Merrill Lynch investment accounts that were not contemporaneously deposited into Katherine Whalen's Guardianship Account. The Whalen Estate is still attempting to ascertain the exact amount of these funds

---

[9] Whalen Estate's Supplemental Responses to Interrogatory Nos. 2 & 3.
[10] Deposition of Patricia Holt, p. 165-168, attached hereto as Exhibit 3.
[11] *See* Bank One Records, attached as Exhibit "A" to the Affidavit of Andrew Whalen, which is attached hereto as Exhibit 4.
[12] *See* First Federal Bank Account Records, attached as Exhibit "B" to the Affidavit of Andrew Whalen.
[13] *See* Merrill Lynch Account Records, attached as Exhibit "C" to the Affidavit of Andrew Whalen; Alvin Blanton Settlement Statements, attached hereto as Exhibit 5.
[14] Blanton Settlement Statements.

and where they went, but it is alleged that at least some of these funds were embezzled by Alvin Blanton.[15]

In addition to the direct embezzlement, the Whalen Estate alleges that Alvin Blanton stole, or allowed Carla Garrett, Patricia Holt, and/or other unknown persons to steal personal property from the residence of Katherine Whalen. A list of the personal property removed from Katherine Whalen's residence is attached hereto. With respect to the missing personal property, a list of that property is set forth in the Affidavit of Amy Whalen, which is attached hereto.[16] Finally, the Whalen Estate also asserts damages against GAIC for the costs and fees incurred collecting against the bond, as permitted by KRS 387.080.[17]

## ARGUMENT

**I. GAIC's potential liability in this case is not limited to the annuity embezzlement.**

GAIC's Motion for Summary Judgment is couched as a procedural objection to its initial joinder as a Rule 14 party, but the substance of its argument is that it cannot be liable to the Whalen Estate for any part of the Plaintiffs' claims for unpaid wages because those claims do not arise from Alvin Blanton's performance of any fiduciary duties for which GAIC is liable as his surety. Essentially, GAIC asserts that the bond it posted only covers the three duties listed in the Court's Emergency Order, and that of these three duties the only duty that Blanton could have breached was improper management of Katherine Whalen's financial resources. GAIC then argues that the duty to manage financial resources did not include hiring the Plaintiffs to care for Katherine Whalen, and therefore that GAIC is not liable for any damages arising from the Plaintiffs' employment and it should be dismissed from this case. Alternatively, GAIC argues that even if it were to remain in the case the only damages for which it could be liable is Alvin

---
[15] *See* Merrill Lynch Account Records.
[16] Affidavit of Amy Hadsell, attached hereto as Exhibit 6.
[17] Whalen Estates Supplemental Responses to Interrogatory No. 4.

Blanton's alleged $78,000.00 embezzlement from Katherine Whalen's annuity, and that it should be dismissed from this action because there are sufficient funds in escrow to recover any embezzled funds.

As set forth below, GAIC's argument completely ignores Kentucky's guardianship and conservatorship statutes through which Alvin Blanton was appointed limited guardian, limited conservator, and eventually full guardian. The argument also ignores the bonding statutes that define the extent of GAIC's liability as surety. These statutes make clear that GAIC's potential liability to the Whalen Estate is far greater than acknowledged in its Motion. GAIC's argument also grossly understates the Whalen Estate's claims against it and the actual amount of these claims, which is far greater than any amount held in Escrow. As will be shown below, GAIC is not only liable for the full extent of the Whalen Estate's claim against Alvin Blanton, but the amount of these claims may exceed the entirety of GAIC's bond.

    **A.    GAIC is liable to the Whalen Estate for Alvin Blanton's exercise of his statutory powers as limited guardian and limited conservator.**

Central to GAIC's Memorandum is its argument that its liability in this case is limited to Alvin Blanton's improper handling of Katherine Whalen's "financial responsibilities." Specifically, GAIC argues that:

> In this instant case, the Fiduciary Bond executed by GAIC simply covenanted that Blanton would faithfully perform his duties as limited guardian of the Whalen Estate. As previously stated, the terms of Blanton's appointment as limited guardian for the Whalen Estate limited his powers and duties to determining living arrangements, consenting to medical procedures and handling financial responsibilities. The Whalen Estate has not alleged that Blanton breached any of his duties with respect to determining living arrangements or consenting to medical procedures. Therefore, to the extent that the Third-Party Complaint asserts a claim against GAIC's bond, it must arise from an alleged breach in his handling of the estate's financial responsibilities.

7

This argument contradicts the Emergency Order upon which GAIC relies, and misstates both Blanton's duties under Kentucky law and GAIC responsibility for his performance of those duties.

With respect to the Emergency Order itself, when Blanton was first appointed limited guardian for Katherine Whalen he was also appointed limited conservator. This is apparent from the last line on the first page of the Order, which states: "That the following [×] individual [ ] agency is appointed Emergency Limited [×] Guardian [×] Conservator."[18] Thus, the Emergency Order relied upon by GAIC not only appoints Blanton as limited guardian, but also appoints him as limited conservator. This is significant, because although the Emergency Order does delineate certain specific powers and duties that Blanton has as limited guardian and limited conservator, the Emergency Order also permitted Blanton to exercise the general powers given all limited guardians and limited conservators by statute.

In Kentucky, there are three primary statutes that control the power and duties of a limited guardian and limited conservator: First, KRS 387.640 sets forth the general powers and duties of a limited guardian, stating:

> It shall be the general duty of the limited guardian or guardian to carry out diligently and in good faith the specific duties and powers assigned by the court **and** to:
>
> (1) Assure that the personal, civil, and human rights of the ward are protected; …

KRS 387.640 (emphasis added). This statute makes it clear that any specific powers and duties that are assigned to a limited guardian by the Court are in addition to those general powers and duties set forth by statute. Then, KRS 387.650 authorizes the court to assign additional specific powers and duties to a limited guardian, stating:

---

[18] GAIC Memorandum, Exhibit 1.

8

> The court may assign to a limited guardian any portion of the powers and duties specified in KRS 387.660. The court may assign other duties as are necessary to enhance the ward's safety and well being.

KRS 387.650. This statute specifically authorizes the Court to assign, in addition to those general duties already imposed b KRS 387.640, further additional duties listed in KRS 387.660 and any other duties that the Court deems necessary.

As for limited conservators, KRS 387.690 both defines their general powers and duties and the grants the court authority to give them additional powers and duties. Specifically, KRS 387.690(1) states:

> (1) A limited conservator or conservator shall expend or distribute, or authorize the expenditure or distribution of, or assist in the expenditure or distribution of, the principal or income from the financial resources placed under his supervision and control to assure that:
>
> (a) The essential requirements for the physical health or safety of the ward are met;
>
> (b) The rights of the ward are protected; …

KRS 387.690. Then, KRS 387.690(3) states:

> (3) In addition to the duties and powers listed in subsection (1) of this section, the court may assign to a limited conservator any of the duties and powers listed in KRS 387.700 which the partially disabled person lacks the ability to perform.

KRS 387.690. Thus, just like KRS 387.640 and 387.650, KRS 387.690 expressly states that any specific duties imposed by the court on a limited conservator are cumulative of the general duties imposed by statute. Moreover, while all three statutes permit a court to assign additional duties on top of those general duties imposed by KRS 387.640, none of them allows a court to limit those general duties.

Pursuant to KRS 387.640, 387.650, and 3897.690, Alvin Blanton's powers upon being appointed limited guardian include those specifically granted by the court in the Emergency Order, and the general statutory powers and duties of a limited guardian and limited conservator. With respect to GAIC's Motion, the most significant of these general powers are the limited guardian's duty to "assure that the personal, civil, and human rights of the ward are protected," and the limited conservator's power to expend assets of the estate to assure that "the essential requirements for the physical health or safety of the ward are met." GAIC argues that it is not liable for the Plaintiffs' claims because Alvin Blanton did not have the authority to contract with the Plaintiffs, but it is undisputed that hiring caregivers for Katherine Whalen was necessary to protect her personal, civil, and human rights, and to meet the essential requirements for her physical health and safety. The Whalen Estate maintains that the Plaintiffs' claims have no merit, but if Alvin Blanton did indeed hire them as companions or caregivers, then their employment as such falls squarely within Alvin Blanton's general statutory powers as limited guardian and limited conservator, and any self-dealing, theft, or other misconduct by Alvin Blanton with respect to their employment is a breach of his fiduciary duties. Similarly, if Alvin Blanton actually failed to pay the Plaintiffs' earned wages for their care of Katherine Whalen, this failure is also a breach of his fiduciary duties. GAIC, as surety for Blanton's performance of these duties, is liable for any such breach.

**B.     Pursuant to KRS 62.070, GAIC is also liable for any breach of Alvin Blanton's duties as full guardian.**

In addition to ignoring Alvin Blanton's statutory powers as limited guardian and limited conservator, GAIC also ignores KRS 62.070, which unequivocally states that GAIC is liable not only for Blanton's duties under the Emergency Order, but also for his duties under any subsequent order. GAIC claims that "the obligation of sureties on fiduciary bonds is established

in KRS 62.060," and that this statute limits its liability to any breach by Blanton of those powers and duties listed in the Court's Emergency Order. But KRS 62.070 expressly rejects any such argument, stating:

> Recovery on the bond shall not be restricted to duties or responsibilities belonging to the office, trust or employment at the date the bond is executed, but may include any duties or responsibilities thereafter imposed by law or lawfully assumed.

KRS 62.070. Here, at the time the bond was executed Alvin Blanton was serving as limited guardian and limited conservator by virtue of the September 14 Emergency Order. Thereafter, additional responsibilities were imposed upon Alvin Blanton when the Court appointed him full guardian by the Order of Appointment executed December 17, 2001. Pursuant to KRS 62.070, recovery on GAIC's bond is not limited to Alvin Blanton's duties under the Emergency Order, but also includes the additional duties of a full guardian that were thereafter imposed. Therefore, not only is there a sufficient basis to recover against GAIC for Blanton's misconduct as limited guardian and limited conservator, but GAIC's statutory liability for Blanton's performance of his duties as full guardian further precludes any argument that it cannot be held liable to the Whalen Estate for all of Blanton's alleged misconduct.

### C. The Whalen Estate's potential damages against GAIC are grossly understated by GAIC's Motion.

As noted above, GAIC is liable for all of Alvin Blanton's misconduct in his performance as limited guardian, limited conservator, and full guardian. The exact extent of this misconduct is an issue of fact to be resolved by the jury, but GAIC's arguments make it necessary to at least identify the various aspects of this potential liability so that there is no further confusion by the parties or the Court.

First, the Whalen Estate claims that GAIC is liable to it for any judgment that may be obtained by the Plaintiffs. The Plaintiffs claim that Alvin Blanton hired them to work as

11

companions and caregivers for Katherine Whalen, but that he failed to pay them for three full years of employment.[19] As limited conservator and guardian, Blanton's duties included: (i) making provisions for Katherine Whalen's care, comfort and maintenance; (ii) spending Katherine Whalen's resources to meet the essential requirements of her physical health and safety; and (iii) managing Katherine's financial resources prudently. KRS 387.690(1); KRS 387.660(2). Hiring companions and caregivers was properly within the scope of these duties, but failing to pay them is clearly a breach of those same duties. Failure to pay wages opens up the estate to tremendous liability, and can hardly be deemed prudent management of resources. While the Whalen Estate denies that the Plaintiffs' are actually owed any back wages, if, as claimed, they are owed three years of back pay, this is the result of gross neglect by Blanton. Any statutory penalties and fees which they may recover are also directly attributable to Blanton's breach of his fiduciary duties, and are recoverable against Blanton and GAIC as his fiduciary. The same is also true for any fees expended defending the Plaintiffs' claim.

Second, even if the Plaintiffs are ultimately unsuccessful, the Whalen Estate has already incurred, and will continue to incur, significant attorney's fees defending the lawsuit. These fees are directly attributable to Blanton's financial mismanagement and inappropriate conduct with respect to the Plaintiffs and are therefore recoverable from GAIC. A prime example of Blanton's inappropriate conduct is the fact that when he allegedly hired Patricia Holt she was his long term "companion." This fact alone raises questions of self-dealing which is further exacerbated by the ridiculous manner in which the Plaintiffs' claim Alvin Blanton allowed them to work and be paid. For example, all of the time records relied upon in the Plaintiffs' claim are hand-written by Patricia Holt.[20] Alvin Blanton failed to maintain any records of hours worked by caregivers or of

---

[19] Plaintiffs' Complaint, ¶¶ 6 & 10.
[20] Deposition of Patricia Holt, p.55-56, Exhibits 4-7, attached hereto as Exhibit 7.

payments made to caregivers. At a minimum, this gross deficiency in maintaining financial records by Blanton is a possible cause of the Plaintiffs' litigation and has dramatically increased the costs of defending the action. In a light most favorable to the Whalen Estate, however, the lack of records, hidden payments, and secret relationship between Blanton and Holt evidence a larger fraud perpetrated by Blanton and the Plaintiffs, of which this litigation is merely the final piece. Either way, because the present situation was caused by Alvin Blanton's gross neglect of his fiduciary duties, GAIC is again liable to the Whalen Estate for all the costs of defending the litigation.

Third, as set forth above, there is substantial evidence that Alvin Blanton embezzled a significant amount of Katherine Whalen's assets. This includes the $117,800 in monthly annuity checks that Alvin Blanton never deposited into the Guardianship accounts, the $19,441.52 in cash withdrawals from the undisclosed Bank One Account, $13,738.17 in checks that Alvin Blanton wrote to himself from Katherine Whalen's Guardianship Account for so called "loans" and anonymous withdrawals, and the $11,000 that Alvin Blanton moved to the undisclosed First Federal Bank Account. Additionally, despite numerous requests, the Whalen Estate still does not have complete records of the undisclosed Bank One and First Federal Accounts, and still does not have complete records of the total withdrawals from Katherine Whalen's Merrill Lynch accounts. It is believed that once these records are obtained numerous additional embezzled funds will be revealed. At this time, however, there is certainly enough evidence of wrongdoing to preclude summary judgment.

Fourth, the Whalen Estate claims that GAIC is liable to it for missing jewelry that is believed to have been stolen by the Plaintiff Patricia Holt, but may have been taken by Blanton himself. GAIC asserts that there is no record of this missing jewelry, that there is no proof that

13

Blanton was responsible for its disappearance, and that Blanton had no duty to protect Katherine Whalen's personal property. As an initial matter, it should be noted that as limited conservator Blanton had a specific duty to account for Katherine Whalen's property. By virtue of KRS 387.710, Blanton was required to provide a verified inventory of Katherine Whalen's personal property that came into his possession or knowledge within 60 days of his appointment as limited conservator. KRS 387.710(1). Blanton was also required to provide biennial verified reports and financial accounts detailing the amount and type of personal property received and remaining, and the nature of any investment or expenditures of that property. KRS 387.710(2). These statutes establish a clear duty upon Blanton to inventory and keep track of Katherine Whalen's personal property, including her jewelry collection. He obviously did not do so, as he failed to properly file a personal property inventory with the District Court and never identified any sale of personal property in any biennial report. Because Alvin Blanton failed to inventory or track the personal property as required by statute, GAIC cannot now say that he is not liable for its loss because there is no record of its distribution. As for the specific missing property, this is listed in the attached affidavit of Amy Whalen.

**II.     GAIC is properly before this Court.**

GAIC's Rule 14 argument is couched as an objection to its initial joinder as a Third-Party Defendant, but its Memorandum does not even attempt to argue that this alleged improper joinder somehow invalidates the claims against it. Instead, without saying as much directly, GAIC implies that if the original complaint against it did not assert a sufficient Rule 14 claim, then the Court somehow now lacks jurisdiction over the allegations that have been pending before it since May, 2006. This argument fails for multiple reasons.

### A. GAIC is barred by waiver and estoppel from now objecting to its initial joinder three years ago.

As an initial matter, GAIC should be deemed to have waived any Rule 14 objection by waiting three years to raise it. GAIC is also estopped from claiming that there is no a valid Rule 14 claim because it had argued the opposite in 2008, stating: "A cursory review of the record reveals that the Whalen Estate has brought third-party claims asserting that the Blanton Estate, and by extension GAIC, may be responsible for some amount of the damages for which it might be liable to the Plaintiffs."[21] Because GAIC waited 3 years to object to its joinder, and because GAIC previously argued that it was in fact alleged to be liable to the Whalen Estate for part of the Plaintiffs' claims, it should not be permitted to reverse course and undermine three years of litigation on procedural grounds.

### B. Blanton's bonded duties included hiring and paying the caregivers and companions.

Even if GAIC were permitted to object to the Rule 14 joinder, the underlying premise of GAIC's argument has been proven incorrect. Specifically, Kentucky's guardian and conservator statutes undermine any claim that Blanton's hiring of the Plaintiffs was beyond his bonded duties. As explained in Section I above, Alvin Blanton's duties as limited guardian, limited conservator, and guardian, included hiring and paying caregivers, and GAIC as surety is liable for all duties assumed by Blanton. If Blanton failed to pay the Plaintiffs for three years of work, then his failure is a breach of the duties insured by GAIC, and GAIC is, at a minimum, liable for the penalties and fees incurred in the Plaintiffs' action, and possibly liable for the entirety of any judgment obtained. At the same time, if the Plaintiffs' claims are proven false, then GAIC is liable to the Whalen Estate for the costs of defending a meritless suit that was, in substantial part, caused by Blanton's grossly deficient management of Katherine Whalen's financial resources,

---

[21] GAIC's Response to Motion to Bifurcate, p. 1, D.E. No. 54.

and possibly perpetrated in part by Blanton himself. Either way, meritless or not, there is substantial evidence by which GAIC could become liable to the Whalen Estate as a result of the Plaintiffs' claims. Therefore, GAIC is a proper Rule 14 third-party defendant in this case.

### C. The Whalen Estates' Third Party Complaint and tendered Amended Third Party Complaint raise valid FRCP 14 Third-Party Claims.

The alleged deficiency in the specific language of the Whalen Estate's Third Party Complaint itself should be ignored for several reasons. First, the Third-Party Complaint alleges that Blanton embezzled the money that he withdrew from Whalen's accounts to pay the Plaintiffs. Third-Party Complaint, ¶ 20. If this allegation is proven true, it is certainly sufficient to give rise to a Third-Party Complaint against Blanton and his surety when the Plaintiffs claim is that they are entitled to the money that was embezzled. Indeed, GAIC's 2008 statement that: "the Whalen Estate has brought third-party claims asserting that the Blanton Estate, and by extension GAIC, may be responsible for some amount of the damages for which it might be liable to the Plaintiffs makes clear that GAIC once fully understood the nature of the claim against it, even though it now tries to twist the intent of the Third-Party Complaint. Second, additional evidence has been uncovered during discovery identifying the gross deficiencies in Alvin Blanton's financial management that caused the Plaintiffs' Complaint to be filed. There is substantial evidence that Blanton's dereliction of his fiduciary duties gave rise to damages asserted by the Plaintiffs, and therefore GAIC is liable to the Whalen Estate for those claims. Third, the Whalen Estate has filed a Motion for Leave to File an Amended Third-Party Complaint, and the attached Third-Party Complaint leaves no doubt as to whether GAIC is a proper Third-Party Defendant pursuant to FRCP 14. This Amended Third-Party Complaint is tendered to bring the pleadings into conformity with the evidence, just as the Court would be permitted to do on its own via FRCP 15.

**D. There are valid grounds to keep GAIC as a Defendant even without FRCP 14 third party claims.**

Even if the initial FRCP 14 joinder of GAIC was improper at the time, that is not a basis to grant judgment in its favor. FRCP 21 expressly states that "Misjoinder of parties is not a ground for dismissing an action." And while FRCP 21 does allow the Court to drop a party or sever a claim "on just terms", Rule 14 is not the only basis that GAIC is a proper defendant in this action. Setting aside for a moment the Whalen Estates FRCP 14 claim for contribution, there is ample basis to join GAIC pursuant to FRCP 19 and FRCP 20. The facts construed in a light most favorable to the Whalen Estate establish that Alvin Blanton defrauded Katherine Whalen, and in one manner or another the Plaintiffs participated in that fraud. For example, when Amy Hadsell spoke to Patricia Holt shortly after Alvin Blanton's death, Holt claimed that she was only owed wages for a couple of months.[22] In a later conversation, Holt stated that if Amy let her remain caregiver she would "make sure there was some money left," but that if not, she "had some aces up her sleeve."[23] While the full extent of Ms. Holt's relationship with Blanton and participation in his embezzlement still remains to be determined by the jury, there is no meaningful way to separate the conduct of Ms. Holt from the conduct of Blanton. Therefore, Blanton and his surety, GAIC, are necessary and permissive parties to this action who could have been joined even if there were not a valid Rule 14 claim, and there is no reason to dismiss GAIC now simply because it now complains about the manner of its joinder three years ago.

**E. This Court has jurisdiction over GAIC.**

Finally, GAIC's suggestion that the alleged improper joinder somehow eliminates the Court's jurisdiction over it confuses two distinct issues. The Court's subject matter jurisdiction

---

[22] Hadsell Affidavit, ¶7.
[23] Hadsell Affidavit, ¶8.

over GAIC in this case has nothing to do with Rule 14; rather, it is supplemental jurisdiction obtained by virtue of 28 U.S.C. §1367, which allows the claims against GAIC to be brought here because they arise from and are "part of the same case or controversy" as the Plaintiffs' Fair Labor Standard Act claims over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1367 specifically states that this Court's "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Thus, 28 U.S.C. § 1367 allows this Court to exercise its supplemental jurisdiction over any claims for which joinder is appropriate. Obviously, the Court can exercise jurisdiction over GAIC in this matter not only through Rule 14, but also through rule 19 or 20, as well as hear any other claims that the Whalen Estate has against GAIC pursuant to FRCP 18(a), which simply states that "[a] party asserting a claim, counterclaim, cross-claim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." FRCP 18(a). Thus, there remains jurisdiction for the Court to continue to adjudicate all matters presently before it.

## CONCLUSION

For the foregoing reasons, the Whalen Estate respectfully requests that GAIC's Motion for Summary Judgment be denied.

Respectfully submitted,

/s/ Adrian M. Mendiondo
Adrian M. Mendiondo
Shelby C. Kinkead, Jr.
Kinkead & Stilz, PLLC
301 East Main Street, Suite 800
Lexington, KY  40507
Telephone: (859) 296-2300
Facsimile: (859) 296-2566
*Counsel for Defendant/Third-Party Plaintiff
Estate of Katherine S. Whalen*

# CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing was served on this the 11th day of December, 2009, by the Court's CM/ECF electronic noticing system, to the following:

Frederick G. Irtz, II, Esq.
111 West Short Street
Post Office Box 22777
Lexington, Kentucky 40522-2777
*Counsel for Plaintiffs*

Thomas E. Roma, Jr., Esq.
George P. Parker, Esq.
Parker & O'Connell, PLLC
455 South Fourth Avenue, Suite 930
Louisville, Kentucky 40202
*Counsel for Third-Party Defendant*
*Great American Insurance Company*

Joseph H. Miller, Esq.
Gess Mattingly & Atchison, P.S.C.
201 West Short Street
Lexington, Kentucky 40507
*Counsel for Third-Party Defendants,*
*Estate of Alvin L. Blanton, and James L. Blanton*

/s/ Adrian M. Mendiondo
*Counsel for Defendant/Third-Party Plaintiff*
*Estate of Katherine S. Whalen*